**In re the MARRIAGE OF Michelle A. CIESLUK, Appellant,**

and

**Christopher J. Ciesluk, Appellee.**

**No. 03CA2047.**

Colorado Court of Appeals, Div. I.

May 20, 2004.

As Modified on Denial of Rehearing Aug. 5, 2004.

Certiorari Granted Nov. 8, 2004.

Anne Whalen Gill, P.C., Anne Whalen Gill, Castle Rock, Colorado, for Appellant.

Fontana & Associates, P.C., Jennifer L. Weaver, Littleton, Colorado, for Appellee.

Opinion by Judge TAUBMAN.

In this postdissolution of marriage proceeding, Michelle A. Ciesluk (mother) appeals from the trial court's order denying her motion to relocate. We affirm and remand for consideration of an award of attorney fees.

Mother and Christopher J. Ciesluk (father) were married in 1995 and are the parents of one child. The parties obtained a decree of dissolution of marriage in September 2002, and mother has had primary residential custody of the child since the dissolution.

In February 2003, mother was laid off as a result of her employer's workforce reduction in Colorado. Mother searched for alternative employment, both in Colorado and in Arizona, where her father and brother resided. She had little success in her efforts to find a job in Colorado, but she received an offer of a new job with the Arizona office of her former employer. This offer was contingent upon her ability to relocate.

In March 2003, mother filed a motion to relocate. Father opposed the motion and moved for the appointment of a special advocate. That motion was granted. After a hearing that included testimony of the special advocate, the court denied mother's motion. Mother appeals this order.

## I.

Mother contends that the trial court applied the incorrect legal standard for deciding a custodial parent's motion to relocate. We do not agree.

## A.

Mother first asserts that the court improperly denied her the benefit of a presumption that it is in a child's best interests to remain with the primary residential parent when that parent moves. We reject this contention.

Section 14–10–129, C.R.S.2003, was amended, effective September 1, 2001, to set forth a

new procedure for determining whether modification of parenting time is in the best interests of the child when the primary residential parent relocates. The procedure applies when the party with whom the child resides a majority of the time seeks to relocate to a residence that will substantially change the geographic ties between the child and the other party.

Section 14–10–129(1)(a)(II), C.R.S.2003, provides that, when considering a relocation request in these circumstances, the court shall take into account all relevant factors, including those set forth in § 14–10–129(2)(c), C.R.S.2003. The factors specified in § 14–10–129(2)(c) include the factors enumerated in § 14–10–124(1.5)(a), C.R.S.2003, and the following additional factors:

(I) The reasons why the party wishes to relocate with the child;

(II) The reasons why the opposing party is objecting to the proposed relocation;

(III) The history and quality of each party's relationship with the child since any previous parenting time order;

(IV) The educational opportunities for the child at the existing location and at the proposed new location;

(V) The presence or absence of extended family at the existing location and at the proposed new location;

(VI) Any advantages of the child remaining with the primary caregiver;

(VII) The anticipated impact of the move on the child;

(VIII) Whether the court will be able to fashion a reasonable parenting time schedule if the change requested is permitted; and

(IX) Any other relevant factors bearing on the best interests of the child.

Before the amendment of § 14–10–129 in 2001, a three-part test was applicable to removal cases. First, the custodial parent was required to present a prima facie case showing a sensible reason for the move. If that showing was made, a presumption allowing the child to remain with the custodial parent arose, and the burden shifted to the noncustodial parent to show that the move was not in the best interests of the child. *In re*

*Marriage of Francis*, 919 P.2d 776 (Colo. 1996). The noncustodial parent could overcome the presumption by showing that one of the factors to be considered in modifying custody or decision-making responsibility had been met: (1) the custodial parent had consented to the modification; (2) the child had been integrated into the noncustodial parent's family with the custodial parent's consent; or (3) the child would be endangered by the move. Alternatively, the noncustodial parent could overcome the presumption by establishing by a preponderance of the evidence that the negative impact of the move would outweigh the advantages of remaining with the custodial parent. *In re Marriage of Francis, supra.*

Citing *In re Marriage of Donovan*, 36 P.3d 207 (Colo.App.2001), mother contends that § 14–10–129, as amended, adds new factors to be considered by the court in determining the best interests of the child and no longer requires the custodial parent to present a prima facie case showing a sensible reason for the move. Mother also contends that if, however, the custodial parent shows a sensible reason for the move, the presumption applies in favor of the custodial parent. Father contends that the presumption in favor of the custodial parent has been abolished. We agree with father.

The legislative history of § 14–10–129 indicates that amendments to the statute were proposed because of dissatisfaction with *In re Marriage of Francis, supra,* and were intended to overrule *Francis*. Hearings on S.B. 01–029 before the Senate Judiciary Committee, 63d General Assembly, First Session (Feb. 12, 2001)(remarks of Senator Gordon). Section 14–10–129, as amended, requires that the court consider a number of factors before deciding whether it is in the child's best interests to be relocated. Nothing in the legislative history or the language of the statute, as amended, suggests that § 14–10–129 contains a presumption in favor of the primary residential parent.

Nor does *In re Marriage of Donovan, supra,* suggest that mother is entitled to a presumption in her favor. Because the motion considered in *Donovan* was filed before the effective date of the amendments to

§ 14–10–129, that case was decided using the *Francis* test.

We conclude the trial court properly found that § 14–10–129, as amended, contains no presumption in favor of the primary residential parent, and the court did not err in refusing to grant mother the benefit of such a presumption.

### B.

■ Mother also contends that the court abused its discretion in giving undue importance to one factor, the maintenance of the relationship between father and the child, and that because the court assigned undue importance to this factor, no motion to relocate could have succeeded. We reject this contention as well.

When the primary residential parent proposes to relocate, the court must consider, among other factors, the anticipated impact of the move on the child and the ability of the court to fashion a reasonable parenting time schedule if the motion to relocate is granted. Section 14–10–129(2)(c)(VII)–(VIII).

■ Decisions regarding parenting time are matters within the sound discretion of the trial court. *In re Marriage of Finer,* 920 P.2d 325 (Colo.App.1996). Thus, it follows that it is within the discretion of the trial court to determine the weight to be given to each relevant factor in making a decision regarding parenting time.

Here, mother's proposed relocation to Arizona would have reduced father's parenting time, rendering it more difficult for father to maintain his relationship with the child. Father opposed the relocation of the child for that reason. The special advocate found that the child would be negatively impacted by father's reduced presence in his life, and such a reduced presence might cause irreparable harm to the bond between father and the child. The difficulty of maintaining frequent contact between father and the child was recognized by mother, who proposed a plan providing for monthly visitation, but later testified that the frequent travel required by such a plan would be hard on the child.

Under the circumstances present here, the trial court did not abuse its discretion in giving substantial weight to the impact of the proposed relocation on the relationship between father and the child.

### II.

Mother next contends that the trial court erred in applying the best interest factors in this case. We do not agree.

### A.

■ Mother contends that the court erred in failing to consider all the statutory factors affecting the child's best interests. We reject this contention.

■■ When determining the best interests of a child, the trial court need not make specific findings on each factor. *In re Marriage of Finer, supra.* Rather, the court's findings are sufficient if they indicate that the court considered all pertinent factors and, along with the conclusions of law, enable the appellate court to understand the basis of the court's order. *In re Marriage of Garst,* 955 P.2d 1056 (Colo.App.1998). The court may satisfy its obligation to make findings by adopting those presented to it by a witness. *See In re Marriage of Garst, supra* (court's adoption of findings of custody evaluator demonstrated that court had considered the statutory factors set forth in § 14–10–124(1.5)).

In its order denying mother's motion to relocate, the trial court specifically stated that it and the special advocate had considered all factors relevant to the determination of the best interests of the child. Although the court adopted the findings of the special advocate, the court also made extensive findings of its own. The court's findings indicate that the court considered mother's reasons for seeking to relocate and other matters that mother now urges as reasons to reverse the court's decision. We conclude that the trial court's findings are sufficient to show that the court considered all pertinent factors.

### B.

■ Mother next contends that the trial court erred in relying on the findings and

conclusions of the special advocate and a scholarly article: Sanford L. Braver et al., *Relocation of Children after Divorce and Children's Best Interests: New Evidence and Legal Considerations,* 17 J. Fam. Psychol. No. 2, at 206–19 (2003). We reject this contention as well.

■ Determinations of the weight, probative force, and sufficiency of the evidence, as well as the inferences and conclusions to be drawn therefrom, are matters within the sole discretion of the trial court. *In re Marriage of Lewis,* 66 P.3d 204 (Colo.App.2003).

Here, at the conclusion of the first day of the hearing, the trial court advised the parties that it was aware of a study concerning the effect of relocation on the children of divorced parents. The court provided copies of a newspaper article describing the study to the parties and to the special advocate, thus affording the parties the opportunity to respond to the issues addressed in the study.

During the second day of the hearing the court observed that one finding of the study was that there was no empirical basis on which to justify a legal presumption that a move which would improve the life of a custodial parent would necessarily confer benefits on the child who moves with the parent. The court confirmed that the special advocate agreed with this finding.

Mother's testimony indicated that the proposed move to Arizona would improve her life. She stated she would have greater family support in Arizona, a lower cost of living, and the possibility of a new job with her former employer.

Mother's testimony also indicated that the move to Arizona would benefit the child. She testified that the school that the child would attend in Arizona was highly rated and that in Arizona he would have the support of her family. However, the special advocate was not persuaded that there would be a large difference between the educational opportunities in Arizona and in Colorado. The special advocate also noted that there was a family support system for the child in both locations: mother's family in Arizona and father's family in Colorado.

Mother testified that she had not accepted a job or located permanent housing in the new location, and she intended to remain in Colorado with the child if her motion to relocate were denied. Thus, the court was not faced with a choice that inevitably would result in reduced contact between the child and one of his parents.

Following the hearing, the court considered the evidence presented, including the report of the special advocate, and concluded that relocation would not be in the best interests of the child. In setting forth the basis for its decision, the court stated that it had adopted "substantially the same rationale" as that presented in the newspaper article describing the study which the court had provided to the parties. That study concluded that, when all other things are equal, a move generally harms the long-term relationship between the child and the parent left behind, and the harmed relationship, in turn, impairs the child.

The court noted that although mother's testimony suggested reasons why the move to Arizona would benefit her, and thus indirectly benefit the child, no evidence had been presented to the court to show that the child's life would be enhanced by moving away from father. The court concluded that it was in the child's best interest to remain close to both parents. By denying the motion to relocate, the court ensured that the child would remain geographically close to both parents.

We disagree with mother's challenges to the court's determinations as to the weight and sufficiency of the evidence and the inferences and conclusions drawn from it. The court considered the evidence before it, determined the weight to be given to the evidence, and reached a conclusion that is supported by evidence in the record. We find no error here.

■ To the extent that mother now challenges the evidence presented on the ground that the special advocate was not qualified as an expert or on the ground that the study cited by the court was not well designed or applicable, these arguments are not properly before this court. Arguments never presented to or considered or ruled upon by a trial

court may not be considered for the first time on appeal. *Estate of Stevenson v. Hollywood Bar & Cafe, Inc.,* 832 P.2d 718 (Colo. 1992).

## III.

Mother requests that she be awarded attorney fees incurred in this matter and her appeal pursuant to § 14–10–119, C.R.S.2003.

To the extent that mother seeks an award of attorney fees incurred prior to this appeal, her request is denied. Because mother did not seek such an award before the trial court, this issue is not properly before this court. *See Estate of Stevenson v. Hollywood Bar & Cafe, Inc., supra.*

Mother's request for an award of attorney fees in connection with this appeal must be considered in light of newly adopted C.A.R. 39.5. That rule, effective January 1, 2004, provides:

> If attorney fees are otherwise recoverable for the particular appeal, the party claiming attorney fees shall specifically request them, and state the legal basis therefor, in the party's principal brief in the appellate court. Any opposition to a request for attorney fees shall be set forth, as pertinent, in either the answer or reply brief. The appellate court may determine entitlement to and the amount of any attorney fees for the appeal. In its discretion, the appellate court may remand to the trial court or tribunal below the determination of entitlement to or the amount of any attorney fees.

Here, mother specifically requested an award of appellate attorney fees in her principal brief and stated the reason for her request—the provisions of § 14–10–119, the unequal resources of the parties, mother's unemployment, and mother's exhaustion of her financial resources, including her share of the marital estate and her retirement savings to provide a comfortable home for the child.

Attorney fees may be otherwise recoverable by mother because an award under § 14–10–119 is not dependent on her being the prevailing party. *See Marriage of Meisner,* 807 P.2d 1205 (Colo.App.1990).

However, pursuant to C.A.R. 39.5, we exercise our discretion and remand to the trial court the determination of both entitlement to and the amount of any attorney fees. *See Watson v. Watson,* 135 Colo. 296, 310 P.2d 554 (1957)(trial court is better equipped to determine questions of fact and to make a full and complete investigation and adjudication). Here, there are factual issues relating to the parties' relative financial circumstances after the filing of the notice of appeal that can best be determined by the trial court on remand.

Order affirmed and case remanded for further proceedings on mother's request for attorney fees.

Judge MARQUEZ concurs.

Judge WEBB concurs in part and dissents in part.

Judge WEBB concurring in part and dissenting in part.

With respect, I dissent from that portion of the majority opinion which remands for a determination of mother's request for fees incurred on appeal under § 14–10–119, C.R.S.2003.

Generally, we do not entertain a claim for attorney fees where, as here, the claim is raised for the first time on appeal. *Harwig v. Downey,* 56 P.3d 1220 (Colo.App.2002)(interpreting § 13–17–101, C.R.S.2003). However, this rule cannot be applied if the grounds for recovering attorney fees are unique to the appellate process. *See* C.A.R. 38(d)("Sanctions for Frivolous Appeal").

Here, the grounds for mother's claim to appellate fees under § 14–10–119 are her reference to "the unequal resources of the parties," coupled with her assertion that she has "exhausted her resources including her share of the marital estate, and her retirement savings in order to provide a comfortable home for the parties [sic] son and pursue this matter while she is unemployed."

Mother provides no record support for these assertions. *See Mauldin v. Lowery,* 127 Colo. 234, 255 P.2d 976 (1953)(refusing to consider statements in briefs unsupported by

references to the record). Moreover, she does not explain the absence of record support on the basis that either the alleged inequality of the parties' resources or the purported exhaustion of her resources could not have been presented to the trial court, because one or both of these circumstances arose only *after* she filed her notice of appeal. *See Estate of Stevenson v. Hollywood Bar and Cafe, Inc.,* 832 P.2d 718 (Colo.1992)(limiting review to issues raised in the trial court).

C.A.R. 39.5 is a procedural rule that does not establish substantive grounds for awarding attorney fees. Regardless, I believe that before exercising our discretion to remand attorney fees claims under C.A.R. 39.5, we should perform a gatekeeper function by subjecting attorney fees claims raised on appeal to at least threshold scrutiny. *Cf. Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999).

In my view, mother's assertions do not survive this analysis. Indeed, if the assertions presented here warrant further proceedings on remand under § 14–10–119, then most appellants or appellees in cases subject to § 14–10–119 could further protract the proceedings, and perhaps obtain settlement leverage over the adverse party, merely by raising before us an unsubstantiated and previously unheard request for attorney fees.