**In re the MARRIAGE OF Marie S. GRAHAM, a/k/a Marie S. Swim, Appellant,**

**and**

**Jeffrey V. SWIM, Appellee.**

**No. 03CA1922.**

Colorado Court of Appeals, Division III.

April 7, 2005.

As Modified on Denial of Rehearing Aug. 11, 2005.

Donald Chad Goldy, Denver, Colorado, for Appellant.

Donna Swoboda Deslauriers, Denver, Colorado; Wollard Law Office, P.C., Eric D. Wollard, Mary A. Wollard, Denver, Colorado, for Appellee.

Opinion by: Judge DAILEY.

In this postdissolution of marriage proceeding, Marie S. Graham, a/k/a Marie S. Swim (mother) appeals from an order designating Jeffrey V. Swim (father) the primary residential parent following mother's decision to relocate to another state and providing for joint decision-making. We affirm.

The marriage of the parties was dissolved in 1998. Custody of the parties' two children was granted to mother, and father was granted liberal parenting time in accordance with the parties' separation agreement.

Mother remarried, and she and her new husband (stepfather) decided to relocate to Missouri. In June 2003, after learning that mother's move was imminent, father filed a motion to modify parenting time, decision-making responsibilities, and child support pursuant to §§ 14–10–129, 14–10–131, and 14–10–115, C.R.S.2004. At the same time, father moved for the appointment of a special advocate and sought a temporary restraining order to prevent mother from removing the children from Colorado, pending the special advocate's report and a hearing on the matter. The trial court refused to grant a temporary restraining order, but permitted father to amend the motion to one seeking a forthwith hearing, and ordered that the children remain in Colorado until the hearing had taken place.

The court appointed a special advocate, who submitted her report in August 2003. The court interviewed both children and heard the testimony of the special advocate, the parties, and the spouse or partner of each party.

After determining that the relevant statute was § 14–10–129, the court adopted the special advocate's findings and recommendations and ordered (1) that decisions regarding the children should be made jointly, (2) that the children should reside primarily in Colorado

with father, and (3) that mother should have parenting time during school breaks and holidays. Mother appeals from this order.

## I.

■ Mother contends that the trial court erred in applying § 14–10–129 to this case and in determining that her relocation to another state, or factors relating to such relocation, constituted a material change in circumstances sufficient to justify modifying the prior parental responsibility decree. We disagree.

Pursuant to § 14–10–131(2)(b.5), C.R.S. 2004, the court may modify a custody decree or decree allocating decision-making responsibility if there has been a modification in parenting time pursuant to § 14–10–129 that warrants a reallocation of decision-making responsibilities. See § 14–10–103(4), C.R.S. 2004; *In re Marriage of Roosa*, 89 P.3d 524, 527 (Colo.App.2004)(term "custody" was abandoned in 1999 and changed to "parental responsibilities," which includes both "decision-making responsibilities" and "parenting time").

Pursuant to § 14–10–129(1)(a)(I) and (II), C.R.S.2004, when a party with whom a child resides a majority of the time seeks to relocate with the child to a residence that will substantially change the geographical ties between the child and the other parent, the court may modify parenting time if, after taking into account all relevant factors, it determines that modification is in the best interests of the child.

Here, mother was the primary residential parent, and her plan to move to Missouri would have substantially changed the geographical ties between the children and father, who remained in Colorado. Accordingly, the trial court properly applied §§ 14–10–129 and 14–10–131(2)(b.5) to determine whether changes in parenting time and decision-making responsibilities were warranted.

## II.

■ Mother contends that the trial court abused its discretion in changing the chil-

dren's primary residence because of her relocation. We disagree.

■ The determination of parenting time is a matter within the sound discretion of the trial court. *In re Marriage of Finer,* 920 P.2d 325, 328 (Colo.App.1996). The reviewing court will not substitute its judgment for that of the trial court so long as sufficient evidence supports the trial court's ruling. *In re Marriage of Monteil,* 960 P.2d 717, 719 (Colo.App.1998).

■ The trial court's findings are sufficient if they demonstrate that the court considered all pertinent factors and, along with the conclusions of law, enable the appellate court to understand the basis of the court's order. *In re Marriage of Garst,* 955 P.2d 1056, 1058 (Colo.App.1998). The court may satisfy its obligation to make findings by adopting the findings of a witness. *See In re Marriage of Garst, supra* (court's adoption of findings of custody evaluator demonstrated that court had considered factors set forth in statute).

Section 14–10–129, as amended, no longer contains a presumption that the child should remain with the primary residential parent if that parent can demonstrate a sensible reason for relocating with the child. *See In re Marriage of Ciesluk,* 100 P.3d 527, 530 (Colo. App.2004)(*cert. granted* Nov. 8, 2004). Whether the child should relocate with one parent or remain in Colorado with the other depends upon an assessment of the child's best interests, taking into consideration the factors enumerated in §§ 14–10–124(1.5) and 14–10–129(2)(c), C.R.S.2004. *See* § 14–10–129(1)(a)(II); *In re Marriage of Ciesluk, supra,* 100 P.3d at 529.

Here, after interviewing both parents, the children, other family members, school personnel, and others, and after considering the statutory factors set forth in §§ 14–10–124 and 14–10–129, the special advocate for the children opined that it would not be in the children's best interests to relocate. The special advocate specifically opined that mother's decision to move appeared to be predicated on her needs and desires and that she "did not fully contemplate how the children could be affected by separation from their father, their extended family, their half-brother and the community." The special advocate noted that the children had attended the same school since preschool and their educational needs had been met at that school, their grandparents resided in the community, and the children were "very integrated in the community" and had been "active in sports and with peers." The special advocate also noted that they had a meaningful relationship with a three-year-old half-brother in their father's home.

The trial court found that the special advocate had addressed all relevant factors, including those enumerated in § 14–10–129(2)(c). In addition, the court found that father was a vital part of the children's lives and that mother's contention that she wanted to remove the children because of abuse and humiliation by father and his family was not believable. The court then found that the recommendations of the special advocate were in the best interests of the children, and the court adopted those recommendations.

Having found, with record support, that it was in the best interests of the children to establish their primary residence with their father in Colorado, the court reallocated both parenting time and decision-making responsibilities in accordance with this finding. We perceive no abuse of discretion here.

## III.

■ Mother contends that the trial court's order changing the primary residence of the children infringed her constitutionally protected right to travel and denied her equal protection of the law. We disagree.

The constitutional right to travel is one of the private interests at stake when a child's primary residential parent seeks to remove the child from the state. *See In re Marriage of Finer,* 893 P.2d 1381, 1388 (Colo.App. 1995).

A parent's right to travel, however, is not absolute. Indeed, most courts have held—and we agree—that a parent's right to travel yields to the state's compelling interest in protecting a child through application of the best interests standard. *See Braun v. Headley,* 131 Md.App. 588, 750 A.2d 624, 635

(2000)(noting, in addition, that there is no constitutional infirmity in giving equal status, in determining the child's best interests, to "(1) . . . the benefit to be given the child from remaining with the custodial parent [who wished to exercise the right to travel]; and (2) the benefit from the non-custodial parent's exercise of his right to maintain close association and frequent contact with the child"); *see also LaChapelle v. Mitten*, 607 N.W.2d 151, 163–64 (Minn.Ct.App.2000)(conditioning mother's sole custody on her return to state did not violate her constitutional rights); *In re Marriage of Robison*, 311 Mont. 246, 53 P.3d 1279, 1284 (2002)(order that children's primary residence would change to father if mother moved out of state did not violate mother's right to travel; court considered statutory factors in determining best interests of children, and evidence demonstrated that it was in their best interests to remain in father's community, where they had a well-established support system, rather than move to a new location with mother, who had no ties with the new community).

■ Our conclusion, in this regard, is not affected by *In re Petition of R.A.*, 121 P.3d 295, 2005 WL 774465 (Colo.App. No. 04CA0503, Apr. 7, 2005), which held that a court's determination of the best interests of the child cannot, in and of itself, support court-ordered grandparent visitation, as against the constitutional rights of fit parents to the care, custody, and control of their children. The best interests of the child standard "is the tiebreaker between fit parents" but is inapplicable in custody or visitation contests between a fit parent and a third party. *Moriarty v. Bradt*, 177 N.J. 84, 827 A.2d 203, 223 (2003).

■ Further, a court's determination that a child's primary residence should be changed if the primary residential parent relocates does not violate the relocating parent's constitutional right to equal protection of the law. Because the focus in applying the best interests standard is on the child, and not on the parents, the standard applies equally to all parents. *LaChapelle v. Mitten*, *supra*.

■ Here, the trial court determined, after considering all relevant factors, that it was in the children's best interests to reside primarily with father. Because the state has a compelling interest in protecting the best interests of the children, and because the best interests standard applied equally to both mother and father, we conclude that neither mother's fundamental right to travel nor her right to equal protection of the law was infringed when the court reallocated parenting time and decision-making responsibilities.

## IV.

Mother contends that the trial court erred in effectively restricting her parenting time without a finding of endangerment as suggested by § 14–10–129(1)(b)(I), C.R.S.2004, and in failing to report alleged child abuse, of which it was informed, to the special advocate or relevant authorities as set forth in § 19–3–304, C.R.S.2004. Because these issues were not presented to the trial court, we will not address them. *See Pomerantz v. Microsoft Corp.*, 50 P.3d 929, 935 (Colo.App.2002)(arguments not presented to, considered by, or ruled upon by the trial court may not be raised for the first time on appeal).

Order affirmed.

## UPON PETITION FOR REHEARING

While mother's petition for rehearing was pending, the supreme court issued its opinion in *In re Marriage of Ciesluk*, 113 P.3d 135 (Colo. 2005). In *Ciesluk*, the supreme court analyzed one of the issues presented here differently than we did in our original opinion and overruled our opinion in that regard.

Ordinarily, we would have withdrawn our previous opinion and issued another in light of the *Ciesluk* opinion. However, in *Ciesluk*, the supreme court relied upon, quoted from, and discussed at some length, our opinion in this case. Consequently, we choose not to withdraw our prior opinion and issue another eliminating the part of our analysis with which the supreme court explicitly disagreed. Instead, we have opted, upon rehearing, to provide this addendum to our original opin-

ion addressing both the impact of the *Ciesluk* decision and an issue raised by mother in her petition for rehearing.

### A.

In *Ciesluk*, the supreme court expressly overruled that part of our opinion stating that "a parent's right to travel yields to the state's compelling interest in protecting a child through application of the best interests standard." See *Ciesluk*, supra, 113 P.3d at 145 & n.17. It did so because (1) "in the absence of demonstrated harm to the child, the best interests of the child standard is insufficient to serve as a compelling state interest overruling the parents' fundamental rights"; (2) § 14-10-129 "expressly requires a trial court to balance the competing constitutional rights of the parents," that is, the relocating parent's constitutional right to travel and the nonrelocating parent's constitutional right to the care and control of a child; and (3) "adopting the best interests of the child as a compelling state interest to the exclusion of balancing the parents' rights could potentially make divorce parents captives of Colorado." *Ciesluk*, supra, 113 P.3d at 145.

The supreme court adopted an analysis that "treats all the competing interests as equal [and considers] that both parents' constitutional interests, as well as the best interests of the child, will be best protected if each parent shares equally in the burden of demonstrating how the child's best interests will be impacted by the proposed relocation." See *Ciesluk*, supra, 113 P.3d at 143, 146. *But cf. Spahmer v. Gullette*, 113 P.3d 158, 163 (Colo.2005)(indicating that "the goal of a modification proceeding [under § 14-10-129] is to maintain ... stability [in the new family units arising out of the dissolution], if possible, in the best interests of the child").

Thus, in *Ciesluk*, the supreme court held: "[B]oth parents share equally the burden of demonstrating what is in the child's best interests. Ultimately, it is incumbent upon the trial court to consider all of the relevant factors under subsection 14-10-129(c) and to decide what arrangement will serve the child's best interest." *Ciesluk*, *supra*, 113 P.3d at 137.

In *Ciesluk*, the supreme court found error in the trial court's (1) requiring the relocating parent to show how the move would enhance the child's life; (2) ignoring indirect benefits of the move to the child; and (3) imposing a burden on the relocating parent that it did not impose on the parent who remained in Colorado. *Ciesluk*, supra, 113 P.3d at 149. As a result, the court said, the relocating parent was improperly "required to carry an unequal share of the burden in demonstrating [the child's] best interests." *Ciesluk*, supra, 113 P.3d at 149.

In our prior opinion, we erred in characterizing the best interests of the child standard, in and of itself, as a compelling state interest. But, consistent with the supreme court's analysis in *Ciesluk*, the trial court here (1) considered the interests of both parents in assessing the issue of the best interests of the children and (2) applied the pertinent statutory factors without placing a burden of proof on either parent. Because the trial court's decision is supported by the record, we affirm it under *Ciesluk*.

### B.

In her petition for rehearing, mother urged that we consider, on the merits, her contention that reversal is required because the trial court failed to report alleged child abuse, of which it was informed, to the special advocate or relevant authorities as set forth in § 19-3-304, C.R.S. 2004.

▮ We did not address this contention because we concluded that mother had failed to raise it before the trial court and thus had not properly preserved it for appeal. Mother asserted, and under the circumstances of this case we agree, that she did not have the opportunity to raise this contention before the trial court. Consequently, we now address mother's contention.

▮ We are not persuaded that reversal is required. Judges are not listed among the twenty-nine categories of persons who are obliged under § 19-3-304 to report child abuse. And the record reflects that mother knew of the alleged abuse and did not report

it to the special advocate, despite having had ample opportunity to do so.

Mother's petition for rehearing is denied.

Judge CASEBOLT and Judge PICCONE concur.